
# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **JERRY GLENN COOKS, 1206868,** | § | |
| Petitioner, | § | |
| | § | |
| V. | § | NO. 3:08-CV-339-O |
| | § | |
| **RICHARD THALER, Director** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division** | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

## I. Procedural Background

Petitioner challenges his conviction for possession of a controlled substance (cocaine) with intent to deliver, in an amount greater than one gram but less than four grams. *State of Texas v. Jerry Glenn Cooks*, No. F-02-52024-J (Crim. Dist. Ct. No. 3, Dallas County, Tex., June 18, 2003). The conviction was enhanced by use of a deadly weapon. Petitioner was sentenced to twenty-five years confinement.

On April 21, 2005, the Fifth District Court of Appeals affirmed the conviction. *Cooks v. State*, No. 05-03-01128-CR (Tex. App. – Dallas, Apr. 21, 2005, pet. ref'd), 2005 WL 914369.

On January 24, 2006, Petitioner filed a state application for habeas corpus relief. *Ex parte Cooks*, No. 59,724-02. In his application, Petitioner also requested leave to file an out-of-time petition for discretionary review ("PDR"). On September 27, 2006, the Court of Criminal Appeals granted Petitioner leave to file an out-of-time PDR, and dismissed Petitioner's remaining claims. *Ex parte Cooks*, 2006 WL 2750685. On January 12, 2007, Petitioner filed his petition for discretionary review. On June 6, 2007, the Court of Criminal Appeals refused the PDR. *Cooks v. State*, PDR No. 1804-06.

On August 6, 2007, Petitioner filed another state habeas application. *Ex parte Cooks*, No. 59,724-03. On February 6, 2008, the Court of Criminal Appeals denied the application without written order on the findings of the trial court.

On February 20, 2008, Petitioner filed the instant habeas petition. He argues:

1. Defense counsel was ineffective when he failed to:

    (A) investigate, use discovery, interview witnesses, render a defense and prepare for trial;

    (B) object to improper prosecutorial comments;

    (C) discuss the case with Petitioner;

    (D) properly object to the affirmative finding of a deadly weapon;

    (E) move for an instructed verdict;

    (F) obtain a transcript of the examining trial in a timely manner;

2. The state failed to disclose the following favorable evidence:

    (A) the transcript of the examining trial; and

    (B) the name of the person who allegedly bought drugs from Petitioner;

> 3. The prosecutor violated Petitioner's right to a fair trial, right to due process and right against self-incrimination during closing arguments when he commented on Petitioner's initial doubts as to how he would plead;
>
> 4. The evidence was legally and factually insufficient to support the use or exhibition of a deadly weapon during commission of the offense.

## II. Factual Background

On June 17, 2002, Dallas Police Officers Christopher Hauffe and James Shivers, Jr., were working undercover. They were watching an apartment complex in an area know for drug transactions. (Trial Tr. Vol. 3 at 22, 67, 115.) Using binoculars, the two officers, in separate cars, watched Petitioner as he played with a butterfly knife. (*Id*. at 24). An unknown, middle-aged black man approached Petitioner and handed him what the officers believed to be money. (*Id*. at 26, 118.) Petitioner then walked over to a chiller unit next to the apartment building. He pulled out a plastic baggie, emptied the contents into his hand, picked one object out from the contents, and handed it to the unknown male. (*Id*. at 26-27, 118.) The unknown male walked away. (*Id*. at 119.) Officer Hauffe then radioed Officer Richard Hunt to the scene to pursue Petitioner and make an arrest. (*Id*. at 35.)

Officer Hunt drove to Petitioner's apartment complex and called Officer Burge to help him make the arrest. (*Id*. at 68-69.) When Hunt arrived to the scene, he saw Petitioner go through the gate of the complex and walk upstairs. (*Id*. at 75-76.) Hunt immediately exited his vehicle and followed Petitioner. (*Id*.) Hunt asked Petitioner to stop and put his hands on his head while Hunt patted him down to find the butterfly knife. (*Id*. at 76.) Hunt removed the knife from Petitioner's back pocket, handcuffed him, and walked Petitioner downstairs to the gate

where Officer Burge was waiting. (*Id*. at 77, 80.)

Communicating through the radio, Officer Hauffe led Officer Hunt to the chiller, where Hunt found the plastic baggie tucked in a hole in the leg of the chiller unit. (*Id*. at 39-40, 81-83.) As Hunt moved back towards Officer Burge and Petitioner, a woman at the scene became excited, screamingly loudly at the officers. (*Id*. at 86.) When Hunt and Burge began moving Petitioner towards Hunt's vehicle, Petitioner started resisting, making the woman more vocal. (*Id*.) Hunt warned Petitioner that he would use mace if Petitioner continued to resist. (*Id*.) After Petitioner continued to resist, Hunt sprayed Petitioner with the mace. (*Id*. at 86-87.) When Petitioner was arrested, he had eighty-six dollars in cash on him. (*Id*. at 89.)

At trial, Officers Hauffe, Hunt and Shivers all testified that Petitioner had a knife. (*Id*. at 25, 79, 122.) Hauffe and Hunt both testified that the knife could cause death or serious bodily injury. (*Id.* at 25 80.) Shivers testified that he performed a field test on the plastic baggie and its contents, which consisted of several rocks of crack cocaine. (*Id*. at 126.) Robert Blake, a chemist at the Southwest Institute of Forensic Sciences, tested the drugs at his lab and found that the baggie contained 2.1 grams of cocaine at 72 percent purity, with a total weight of 2.9 grams including adulterants and dilutants. (*Id*. at169.)

### III.  Discussion

**1.  Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The petition in this case is subject to review under the AEDPA.

**2.      Brady Violation**

Petitioner argues the prosecutor committed misconduct by suppressing evidence favorable to the defense in violation of *Brady v. Maryland*, 373 U.S. 87 (1963). To establish a *Brady* violation, Petitioner must show: (1) the prosecutor suppressed or withheld evidence; (2) that was favorable; and (3) material to the defense. *Id*. at 87. The evidence is only material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Additionally, there is no *Brady* violation if the defendant, using due diligence, could have

obtained the information. *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994) (citing *United States v. Ramirez*, 810 F.2d 1338, 1343 (5th Cir. 1987); *see also, West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.")

Petitioner argues the prosecutor withheld: (1) the name of the man who allegedly bought the drugs from him; and (2) the examining trial transcripts. The record shows that police officers did not detain the man who bought the drugs from Petitioner. Officer Hauffe testified that officers did not know this man's name, or how to locate him. (Trial Tr. Vol. 3 at 54.) Petitioner has failed to show the prosecution withheld this man's name, or that this evidence was exculpatory. Petitioner has also failed to show that the prosecutor withheld the examining trial transcripts. Petitioner was aware of these transcripts and could have obtained a transcription. Petitioner's claims should be denied.

**3.     Improper Jury Argument**

Petitioner argues the prosecutor committed misconduct in closing arguments when he commented on Petitioner's plea to the charges. Petitioner argues these comments violated his Fifth Amendment right against self-incrimination and violated his due process rights.

Prosecutorial misconduct implicates due process concerns. *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). When a petitioner asserts a due process violation, the Court must determine whether the prosecutorial comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate review for such allegations is "the narrow one of due process, and not the broad

exercise of supervisory power." *Id.* (quoting *Donnelly,* 416 U.S. at 642).

At the start of trial, the prosecutor read the indictment in open court before the jury. The court then asked Petitioner:

> COURT:       What plea do you make to this charge, sir?
>
> PETITIONER:  I don't know, man.
>
> COURT:       I have to have a plea. If you choose not to plea, I'll enter a plea of not guilty for you. Otherwise, you have the right to enter any plea.
>
>              I'm sure your attorney has explained to you your options. You just have to tell us what your plea is.
>
> PETITIONER:  Not guilty.

(Trial Tr. Vol. 3 at 12.)

In closing arguments, the prosecutor stated:

Well, you heard in open court yesterday when the judge asked Mr. Cooks how do you plead to this indictment, sir? Guilty or not guilty? The first words out of Mr. Cooks mouth were I don't know yet. I don't know yet.

(Trial Tr. Vol. 4 at 17.)

Petitioner has failed to establish prosecutorial misconduct. First, Petitioner made his plea statements in open court in the presence of the jury. The jury was therefore already aware of Petitioner's statements. Additionally, Petitioner has failed to show that the prosecutor's statements rendered the trial so unfair that it violated due process. Petitioner's claims should be denied.

4.  **Sufficiency of the Evidence**

Petitioner argues the evidence was insufficient to support the deadly weapon finding. Federal habeas review of an insufficiency of the evidence claim is extremely limited. A federal

court may not disturb a conviction in a state criminal proceeding unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991). The evidence must be viewed in the light most favorable to the verdict. *Jackson*, 443 U.S. 319; *Gibson*, 947 F.2d at 781. This standard of review applies in both direct and circumstantial evidence cases. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

> Under Texas law, a "deadly weapon" is defined as:
>
> (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or
>
> (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE § 1.07(a)(17). Whether a particular knife is a deadly weapon depends on the evidence presented. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). Expert testimony is not required to determine if a knife is a deadly weapon. *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986); *Rivera v. State*, 271 S.W.3d 301, 304 (Tex. App. – San Antonio 2008, no pet.).

In this case, Officer Hauffe testified that he saw Petitioner in the parking lot with a knife. (Trial Tr. Vol. 3 at 25.) He stated Petitioner "had a – what's called a butterfly knife. It's a knife that opens by gravity. . . . And there was a tree that was there along the parking lot, and he would walk up to the tree and was like stabbing at the tree or cutting the bark off." (*Id*.) Officer Hunt testified that when he frisked Petitioner, he found the knife in Petitioner's back pocket. (*Id*. at 77.) Officer Hunt described the knife by stating: "You pull it out and with a flick of the wrist you can bring it open and produce a fairly substantial weapon." (*Id*. at 80.) Officer Hunt

testified the knife was a deadly weapon. (*Id*.) The knife was also admitted as evidence. (*Id*. at 77.)

The Court finds that viewing the evidence in the light most favorable to the verdict, there was sufficient evidence to determine that the knife found on Petitioner was a deadly weapon.

Petitioner also argues the evidence was insufficient to show that he used or exhibited the knife during the offense. Under Texas law, to establish an affirmative finding of a deadly weapon, the state must show that the deadly weapon was:

> . . . used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.

TEX. CODE CRIM. PROCEDURE 42.12 Sec. 3g(a)(2). The required "use" can be shown by "any employment of a deadly weapon, even simple possession, if such possession facilitates the associated felony." *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004). Texas courts have determined that possession of a weapon can facilitate criminal possession of drugs with intent to distribute them. *Gale v. State*, 998 S.W.2d 221, 226 (Tex. Crim. App. 1999) (finding that when unloaded weapons, ammunition, and distribution-sized packages of marijuana are found together in closet, jury could determine weapons were used to facilitate possession of marijuana); *Dimas v. State*, 987 S.W.2d 152, 153-55 (Tex. App. – Fort Worth 1999, pet. ref'd) ("mere possession is enough if it facilitates the associated offense"); *Donaldson v. State*, 2009 WL 4049113, (Tex. App. – El Paso 2009) (finding evidence of deadly weapon sufficient where jury could find that possession of the weapon facilitated the drug possession by protecting the drugs).

In this case, Petitioner had the knife in his pocket at the time he sold the drugs. The trial

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge**          Page -9-

court could have determined that possession of the weapon facilitated the drug sale. Viewing the evidence in the light most favorable to the verdict, the Court finds Petitioner's insufficiency of the evidence claim should be denied.

5. **Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**A. Failure to investigate and prepare for trial.**

Petitioner argues his counsel was ineffective because he failed to: investigate the case, call witnesses, visit the scene of the offense, test the drugs, locate the unknown black male who

allegedly bought drugs from Petitioner, and "render a defense."

Petitioner has submitted no evidence that any witness would have testified favorably for the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, Petitioner must show that the testimony would have been favorable); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). He has also submitted no evidence that any further investigation or testing of the drugs would have been favorable to the defense.

Petitioner argues that a visit to the crime scene would have established that shrubs and trees around the apartment complex were too thick for the officers to view Petitioner selling any drugs. At trial, however, the officers contradicted this claim. On cross-examination, Officer Shivers stated the bushes and shrubs did not block his view of Petitioner. (Trial Tr. Vol. 3 at 130.) Additionally, both Officers Shivers and Hauffe testified that photographs of the area that were admitted at trial were a fair and accurate representation of the crime scene at the time of the incident. (*Id.* at 29-30, 50-51, 130.)

Petitioner also claims his counsel failed to render a defense and that counsel told him he was not prepared for trial and would seek a continuance. The record does not show that defense counsel requested a continuance or that defense counsel was unprepared for trial. Petitioner has also failed to state what other preparation his counsel should have made or what defense his counsel should have pursued. Petitioner's claims are conclusory and should be denied. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

### B. Failure to Object to Closing Argument

Petitioner argues his counsel was ineffective for failing to object to the prosecutor's statements in closing argument. In closing arguments, the prosecutor stated:

> Well, you heard in open court yesterday when the judge asked Mr. Cooks how do you plead to this indictment, sir? Guilty or not guilty? The first works out of Mr. Cooks mouth were I don't know yet. I don't know yet.

(Trial Tr. Vol. 4 at 17.)

As discussed above, Petitioner made his plea statements in front of the jury. The jury was therefore already aware of Petitioner's plea statements. Petitioner has not shown that but for his counsel's failure to object to the closing argument, there is a reasonable probability that the result of the trial would have been different.

### C. Failure to Discuss the Case

Petitioner argues his counsel was ineffective because he failed to properly discuss the case with him. Petitioner states that although defense counsel reviewed the state's file, informed Petitioner of the state's plea offer, and advised Petitioner that his case was weak, counsel "never ascertained or verified the facts by speaking to his client." (Traverse at 6.) Petitioner, however, has failed to state what other facts his counsel failed to obtain from him, or how this would have reasonably changed the outcome of the trial. Petitioner's claims are conclusory and should be denied.

### D. Failure to Object to Deadly Weapon Finding

Petitioner argues his counsel was ineffective because he failed to object to the deadly weapon finding by arguing the butterfly knife was not connected to the drug offense, and was not used during commission of the offense. (Traverse at 9; Pet. Memo at 4.)

As discussed above, the evidence was sufficient to show that Plaintiff used a deadly weapon in commission of the drug offense. His counsel was not required to make frivolous objections. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). Petitioner has failed to show that had counsel raised this objection, there is a reasonable probability the result of the trial would have been different. Petitioner's claim should be denied.

### E.  Failure to Move for Instructed Verdict

Petitioner argues his counsel was ineffective because counsel failed to move for an instructed verdict. As discussed above, the evidence was sufficient to support the verdict in this case. Petitioner has stated no valid bases for an instructed verdict. Defense counsel is not required to file frivolous motions. *Gibson*, 55 F.3d at 179. Petitioner's claim should be denied.

### F.  Failure to Obtain Examining Trial Transcript

Petitioner argues his counsel was ineffective for failing to obtain a transcript of the examining trial. Petitioner states that Officer Hauffe's examining trial statements were inconsistent with his trial statements.

Petitioner raised this claim on state habeas review. The state court found, "even though the statement of the facts from the examining trial was not available, counsel was able to fully establish that Hauffe's trial testimony differed from his examining trial testimony." *Ex parte Cooks*, No.59,724-03 at 74-75.

The record shows that Officer Hauffe testified at trial that Petitioner put the drugs behind a chiller. (Trial Tr. Vol. 3 at 34.) At the examining trial, however, Officer Hauffe stated that Petitioner put the drugs in the grass. (*Id*. at 59.) Defense counsel cross-examined Officer Hauffe regarding this inconsistency. The records states:

| | |
|---|---|
| COUNSEL: | Now, you testified at the examining trial that the drugs were in the grass next to the driveway. How do you explain that inconsistency? |
| HAUFFE: | I may have misspoke then. That's the only thing I can think. Yesterday when we went out there – I mean I've driven down the alley before but I mean I have never just seen the cooler close up. |
| COUNSEL: | Okay. At that time did you just assume that there was grass next to the driveway? |
| HAUFFE: | You know, I had just misspoke. |
| COUNSEL: | Okay. So you were incorrect about that? |
| HAUFFE: | About when I talked to you prior about this? |
| COUNSEL: | Yes, sir. |
| HAUFFE: | Yes. |

(*Id*. at 59-60.)

The record shows that defense counsel fully developed the testimony regarding Officer Hauffe's inconsistent statement. Petitioner has failed to establish his counsel was ineffective.

**6. Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 26th day of March, 2010.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).